IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DOGA CANCA<br>11 Tweed Road<br>Levittown, PA 19056<br><br>    Plaintiff,<br><br>    v.<br><br>AMAZON.COM, INC.<br>410 Terry Avenue North<br>Seattle, Washington 98109<br>    and<br>AMAZON.COM. DEDC, LLC.<br>50 New Canton Way<br>Robbinsville, NJ 08691<br><br>    Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br>No.: 20-cv-1518<br><br><br><br>**JURY TRIAL DEMANDED** |

## SECOND AMENDED CIVIL ACTION COMPLAINT

Plaintiff, Doga Canca, (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

### I. Introduction

1. Plaintiff has initiated this action against Amazon.Com, Inc. and Amazon.Com. dedc, LLC (hereinafter referred to collectively as "Defendants") for violations of the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §§ 2601, *et. seq.*) the New Jersey Law against Discrimination ("NJ LAD" - N.J.S.A. §§ 10:5-1 *et. seq.*), the American's with Disabilities Act ("ADA" – 42 U.S.C. §§ 12101 *et. seq.*), the New York State Human Rights Law ("HRL" – N.Y. Exec. Law §§ 290 *et. seq.*), and the New York City Human Rights Law ("NYCHRL" – N.Y.C. Admin. Code §8-101 *et seq.*). As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## II.     Jurisdiction and Venue

2. This action is initiated pursuant to the Family and Medical Leave Act ("FMLA"). This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this State and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945) and its progeny.

3. The United States District Court for the District of New Jersey has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state-law claim(s) because such claim(s) arise out of the same common nucleus of operative facts as her federal claims asserted herein. This Court would alternatively possess diversity jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Parties, and Plaintiff is seeking in excess of $75,000.00 in the above-captioned case exclusive of interest and costs.

4. Venue is properly laid in this District pursuant to 28 U.S.C. sections 1391(b)(1) and (b)(2), because Defendants reside in and/or conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5. Plaintiff properly exhausted her administrative remedies in order to proceed with her ADA claims *herein*, as she timely filed her charge of discrimination with the Equal Employment Opportunity Commission, received her notice of right-to-sue and brought forth the instant claims within 90 days thereof.

### III. Parties

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult with an address as set forth above.

8. Amazon.com, Inc. (hereinafter "Defendant Amazon Inc." where referred to Individually) is a public company providing on-line retail shopping services internationally.

9. Amazon.com. dedc, LLC (hereinafter "Defendant Amazon LLC" where referred to individually) operates as a subsidiary of Amazon Inc., and is a separate entity (*in name*) established to oversee distribution centers to facilitate on-line sales.

10. Defendants have and continues to employ over fifteen (15) employees per calendar year for at least the last 5 years, rendering Defendants employers under the ADA.

11. At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the benefit of Defendants.

### IV. Factual Background

12. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

13. Plaintiff was hired by Defendants in late 2016 (commencing employment in January of 2017); and in total, Plaintiff was employed with Defendants for in excess of 2 years.

14. Plaintiff spent *more than* fifty-percent (50%) of her employment tenure with Defendants working in New Jersey. More specifically, Plaintiff worked for Defendants at 50 New Canton Way, Robbinsville, NJ 08691 (the "Robbinsville location").

15. After having worked for Defendants at the Robbinsville location for her first approximate 20 months, Plaintiff was transferred to Defendants' fulfillment (and distribution) center at 546 Gulf Avenue, Staten Island, NY 10314 (the "Staten Island location").

16. The Staten Island location was an approximate 100 million dollar, 855,000 square-foot distribution center opened by Defendant Inc. in mid-2018. The new and/or additional supervisory staff at said location were desired.

17. The transfer to the Staten Island location was premised upon a promotion Plaintiff received to the title of General Manager Assistant. Plaintiff worked at the Staten Island location commencing August 2018 (and following a promotion offer in July 2018), and she was employed at this location for an additional 7 (approximate) months before being terminated in March of 2019 (in the midst of transferring and being rehired back in New Jersey, as discussed *infra*).

18. Plaintiff was deemed a direct employee of Defendant LLC, she received payroll (and tax information) from Defendant LLC, and her immediate supervisors were Defendant LLC employees. However, Defendant Inc. (the parent company) is properly a single, joint, and/or integrated employer of Plaintiff for reasons including but not limited to the following:

   (a) Defendant Inc. plans, builds, and establishes each distribution center;

   (b) Defendant Inc. has senior management overseeing distribution centers all over the United States, including but not limited to, both locations wherein Plaintiff was employed;

   (c) National press releases identify Defendant Inc. as the entity controlling openings and operations at distribution centers;

   (d) Defendant Inc. freely and at will transfers management all over the United States within Defendant LLC;

   (e) Policies, benefits, e-mails and other documentation are used interchangeably and universally throughout both entities; and

4

(f) Overall, both entities sufficiently overlap in business management, strategic planning, performance of the same business functions of sales and shipping, on-line publications of jobs, information, and advertising, and are in essence the same integrated enterprise.

19. Because both named entities function as a single enterprise other than name delineation, they are properly identified in this lawsuit as Plaintiff's employers.

20. Once placed at the Staten Island location by Defendants, Plaintiff's immediate supervisor was Anand Mehta (an approximate 8.5-year employee of Defendants), a current Director of Operations (and prior General Manager). Mehta directly supervised Plaintiff from her transfer (July 2018) through February 2019.

21. Chris Colvin ("Colvin"), a prior Assistant General Manager (and General Manager as of February 2019), is an approximate 5-year employee of Defendants working in various positions (and locations) for Defendants (primarily in senior management) throughout the Greater New York City area.

22. Colvin directly supervised Plaintiff from in or about February of 2018 through Plaintiff's termination from employment.

23. While in the employ of Defendants, Plaintiff had and continues to suffer from various health problems. These health problems include Premature Ventricular Contractions (a/k/a "PVC"), among other heart-related complications and cardiovascular problems. This is a permanent, serious disability (as to the collective complications). Plaintiff has received ongoing treatment, surgery, and has life-long accommodation needs. Additionally, Plaintiff has also suffered from a mini-stroke. Notwithstanding the foregoing health conditions, Plaintiff was always able to perform the essential functions of her job(s) with Defendants.

24. Upon placement at the Staten Island location, Plaintiff kept all relevant management apprised of her health conditions. In or about August of 2018, Plaintiff required a surgical procedure. Between August 2018 through her ultimate termination from employment in March of 2019, Plaintiff sought and used various medical accommodations such as: (1) intermittent time off from work for medical reasons; (2) breaks as needed; and (3) outlining her lifting restrictions of over 40 lbs to Defendants' management. And she had discussed other issues with Defendants' management such as travel to and from work (1 reason for her later transfer request back to New Jersey) and scheduling.

25. Overall, Defendants' management was antagonistic about Plaintiff's health and expressed medical needs. Her management (primarily Colvin) was unsympathetic when she discussed her health, was dismissive, and Defendants' Human Resources personnel was blatantly discriminatory. In particular, Derrik Atkinson (Sr. Human Resources Manager), an approximate 3-year employee of Defendants, expressed he did not think Plaintiff would be able to perform her job in light of her health conditions (in a discussion about scheduling).[1]

26. In or about early February 2019, Plaintiff requested from Defendants' management a transfer (and return) to the Robbinsville location (in New Jersey). As part of the transfer process, Plaintiff sought several different potential roles and was willing to work in many different capacities as many types of jobs frequently open up in Defendants' distribution centers on a continual basis.

27. As part of the process to transfer back to New Jersey in February of 2019, Plaintiff interviewed at the Robbinsville location. Plaintiff was approved for hire and/or transfer to Defendants' Robbinsville location. Transferring employees such as Plaintiff are placed on an

---

[1] There are many examples of mistreatment. This paragraph is only intended to provide some examples of negativity Plaintiff experienced on account of discussions about her health with Defendants' management in the months preceding her termination from employment.

internal priority list whereby they are given the first open favorable (and applicable) position (of which there were several). And in particular, Plaintiff expected to work as an Area Manager or in another supervisory capacity, as eligible and needed.

28. Plaintiff communicated with her management at the Staten Island location the transfer request was for several reasons. But among those reasons, Plaintiff identified that her physicians were closer in New Jersey, medical appointments were easier to schedule and attend closer to her doctors, the distance of Staten Island was exacerbating some of her health issues, and it would medically benefit her to return to New Jersey.

29. Shortly after being approved for her transfer to the Robbinsville location (also a form of accommodation), Plaintiff was terminated on or about March 5, 2019 for completely fabricated and pretextual business misconduct-related claims.

30. The above-captioned lawsuit includes a claim under the New Jersey Law Against Discrimination for failure to hire because, although Plaintiff was terminated from the Staten Island location after 7-8 months of working at that location, she was denied a position for which she was to be placed and/or hired **in New Jersey** (the Robbinsville location).

## PLAINTIFF'S PRETEXTUAL TERMINATION

31. Plaintiff was terminated on or about March 5, 2019. The rationale given to Plaintiff for her termination was that she sought compensation outside of normal business hours – or in other words – performed work for Defendants *before or after work or over a weekend*.

32. Plaintiff was paid hourly. Plaintiff freely acknowledges she submitted time worked during and outside of her regularly scheduled work shifts (although it was very insignificant). Part of Plaintiff's job duties **required** her to shop for food, pastries, decorations, balloons, and other products for parties, events, meetings, and other occasions.

33. There are at least **8** separate reasons why Plaintiff's termination was for objectively false, made-up and pretextual reasons as follows:

(1) Management who were aware of Plaintiff's health conditions, requested accommodations, and concerns of mistreatment were involved in Plaintiff's termination. Atkinson, a Senior HR Manager had previously referenced Plaintiff's medical conditions as a "barrier" to her work, and HR was involved in Plaintiff's termination.

(2) Plaintiff had been an otherwise stellar employee for years without prior progressive discipline or warning for any such related or unrelated alleged misconduct;

(3) Plaintiff was well received by New Jersey management who was welcoming the opportunity to have her as a supervisory figure back in Robbinsville because of her organization, skills, and work ethic (if not terminated);

(4) Plaintiff was terminated for identifying **some** minimal work hours outside of normally scheduled hours which was exceedingly *de minimis* and comprised <u>very few</u> hours over many months of time;

(5) Plaintiff had submitted time logs of hours worked in the same manner prior to extensive discussions of her health or accommodation needs, and she was **never once** informed of any purported concerns;

(6) Had Plaintiff ever once been warned not to submit any further time for or work outside of regular business hours, she would not have done so. Yet, all of her time had been **approved** by Defendants' *own* management;

(7) Plaintiff was terminated for identifying some sporadic shopping hours in various months when directed to assist with events, but she possesses texts and other materials demonstrating while doing the very shopping **she was communicating with Defendants' own management and human resources personnel (*who were even making requests of her*)**; and

(8) Everyone knew Plaintiff performed miscellaneous shopping on an infrequent basis when asked to assist with events because Defendants' own loss prevention personnel (in charge of ensuring no theft or improper off-the-clock work) assisted with carrying such materials into work from Plaintiff's vehicle (demonstrated in photos, separate and apart from texts and e-mails showing supervisory staff knew Plaintiff had to occasionally shop for events outside of work hours).

8

34. No possible factfinder (judge or jury) would ever believe there was a plausible or legitimate reason for Plaintiff's termination from employment by Defendants. As a direct, actual and proximate cause of Plaintiff's termination, her offer of hire and/or transfer in New Jersey (at the Robbinsville location) became unavailable.

35. Plaintiff sought redress from upper levels of management following her termination for an undeniably bogus rationale, but Defendants made no meaningful effort to take Plaintiff's concerns seriously or to conduct a worthwhile investigation. Instead, Defendants have exhibited a systemic failure to oversee or rectify any wrongful termination or discrimination scenarios (even being perpetrated at the hands of its own human resources management).

**Count I**
**Violations of Family and Medical Leave Act ("FMLA")**
**(Interference & Retaliation)**
**- Against Both Defendants -**

36. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

37. Plaintiff seeks relief herein for: (1) her wrongful termination; and (2) her denial of a job position in Robbinsville, New Jersey following her termination from employment.

38. Plaintiff was a full-time employee who worked for Defendants for more than 1 year within a location that employed at least 50 employees within 75 miles (as either the Robbinsville or Staten Island locations meet this threshold).

39. Plaintiff exercised her FMLA entitlements from mid-2018 through March 2019 by taking time off from work: (a) on an intermittent basis; (b) for medical appointments; (c) by coming in late or leaving early as needed; and (c) by requesting other time off or scheduling needs. The FMLA counts small increments of time, even for breaks. And the FMLA applies to reduced scheduling as well or, as also utilized in this situation, intermittent time off from work.

40. Plaintiff seeks relief herein for: (a) Defendants' failures to properly designate FMLA, failure to provide proper information and notices and to follow FMLA regulations; (b) Defendants' attempts and actions to dissuade use of FMLA rights and privileges; (c) Defendants' mistreatment of Plaintiff for her exercise and/or attempted exercise of her FMLA rights; and (d) for terminating Plaintiff because of and following the functional exercise of her FMLA rights and to prevent Plaintiff from further exercising her FMLA rights.

### Count II
### Violation of the New Jersey Law Against Discrimination (NJ LAD)
**(Retaliation)**
**- Against Both Defendants -**

41. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

42. Plaintiff seeks relief herein for her denial of a job position in Robbinsville, New Jersey following her termination from employment.

43. Plaintiff had: (1) requested various accommodations such as those set forth previously in this lawsuit; and (2) she expressed concerns of discriminatory treatment and informed for example Atkinson (Sr. HR Management) of offense she took to concerns her health was a barrier to her job explaining she could perform her job well. These actions are "protected activities" under the NJ LAD.

44. Plaintiff's non-hire in New Jersey was because of the aforesaid protected activities constitutes unlawful retaliation in violation of the NJ LAD.

## Count III
### Violation of the New Jersey Law Against Discrimination (NJ LAD)
(Discrimination)
- Against Both Defendants -

45. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

46. Plaintiff has and continues to suffer from medical conditions protected by the NJ LAD and jurisprudence interpreting the NJ LAD.

47. Plaintiff was denied a position in New Jersey following her termination on account of and because of her perceived, record-of, and known or actual disabilities.

48. These actions as aforesaid constitute violations of NJ LAD and unlawful discrimination.

## Count IV
### Violation of the Americans With Disabilities Act, as Amended (ADAAA)
(Discrimination & Retaliation)

49. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

50. Plaintiff seeks relief herein for: (1) her wrongful termination; and (2) her denial of a job position in Robbinsville, New Jersey following her termination from employment.

51. Plaintiff had: (1) requested various accommodations such as those set forth previously in this lawsuit; and (2) she expressed concerns of discriminatory treatment and informed for example Atkinson (Sr. HR Management) of offense she took to concerns her health was a barrier to her job explaining she could perform her job well. These actions are "protected activities" under the ADA.

52. Plaintiff's termination and non-hire because of the aforesaid protected activities constitutes unlawful retaliation in violation of the ADA.

53. Plaintiff has and continues to suffer from medical conditions protected by the ADAAA and jurisprudence interpreting the ADAAA.

54. Plaintiff was specifically terminated and denied a position in New Jersey following her termination on account of and because of her perceived, record-of, and known or actual disabilities.

55. These actions as aforesaid constitute violations of ADAAA and unlawful discrimination.

56. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) in order to proceed with her ADA claims *herein*. Thereafter, Plaintiff received a notice of her right-to-sue and has commenced the instant claims within 90 days thereof. Therefore, Plaintiff has properly exhausted her administrative remedies in order to pursue her mirroring federal ADA claims.

### Count V
### Violation of the New York State Human Rights Law ("HRL")
#### (Discrimination & Retaliation)

57. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

58. Plaintiff incorporates the allegations in Count IV into claims asserted under the HRL *herein*, as the HRL is a single statute prohibiting the actions taken against Plaintiff as set forth in this Complaint and Count IV.

59. The allegations in this Complaint and Count IV as aforesaid constitute violations of the HRL and unlawful discrimination and retaliation.[2]

### Count VI
### Violation of the New York City Human Rights Law ("NYCHRL")
#### (Discrimination & Retaliation)

60. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

61. Plaintiff incorporates the allegations in Count IV into claims asserted under the NYCHRL, *herein*, as the NYCHRL is a single statute prohibiting the actions taken against Plaintiff as set forth in this Complaint and Count IV.

62. The allegations in this Complaint and Count IV as aforesaid constitute violations of the NYCHRL and unlawful discrimination and retaliation.[3]

**WHEREFORE**, Plaintiff prays that this Court enter an order providing that:

A. Defendants are to be prohibited from continuing to maintain their illegal policy, practice, or custom(s) of discriminating or retaliating against employees based on disabilities or protected activities, and are to be ordered to promulgate an effective policy against such discrimination/retaliation/interference and to adhere thereto;

B. Defendants are to compensate Plaintiff, reimburse Plaintiff, reinstate Plaintiff where determined to be possible and/or feasible, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay (absent reinstatement), salary, pay increases,

---

[2] "In general, disability claims under the HRL and NYCHRL are subject to the same analytical framework as claims under the ADA." *Fleming v. Verizon N.Y. Inc.*, 2006 U.S. Dist. LEXIS 68632, at *54-55 (S.D.N.Y. Sep. 22, 2006). *See, e.g.*, *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 n.3 (2d Cir. 2001); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 n.1 (2d Cir. 2000) (HRL); *Mohamed v. Marriott Int'l Inc.*, 905 F. Supp. 141, 156-57 (S.D.N.Y. 1995) (NYCHRL).

[3] *See* footnote 2.

bonuses, many remaining unpaid expenses incurred while working for Defendants, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered the aforesaid unlawful actions at the hands of Defendants until the date of verdict, and Plaintiff specifically seeks reinstatement as a remedy herein;

  C. Plaintiff is to be awarded punitive or liquidated damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct, and to deter Defendants or other employers from engaging in such misconduct in the future;

  D. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress and pain and suffering);

  E. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

  F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law;

  G. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

                    Respectfully submitted,

                    **KARPF, KARPF & CERUTTI, P.C.**

By:    */s/ Adam C. Lease*_____
        Adam C. Lease, Esq.
        3331 Street Road
        Two Greenwood Square, Suite 128
        Bensalem, PA 19020
        (215) 639-0801
        *Attorneys for Plaintiff*

Dated: April 30, 2020